(163 App. Div. 286)

PEOPLE ex rel. PISANI v. McKELWAY et al.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1914.)

1. Physicians and Surgeons (§ 5*)—Licenses to Practice—Indorsement of Licenses of Other States.

Public Health Law (Laws 1909, c. 49 [Consol. Laws, c. 45]) § 169, providing that applicants for a license to practice medicine examined and licensed by other state examining boards registered by the regents as maintaining standards not lower than those provided by that act "may" without further examination, on submitting such evidence as the regents may require, receive from them an indorsement of their licenses or diplomas conferring all the rights and privileges of a license issued after examination, is not mandatory, and, while the discretion given the regents in according or withholding the indorsement of a license cannot be arbitrarily exercised, it was not an improper exercise of such discretion to refuse to indorse a license issued in Michigan after an examination conducted in the Italian language to an Italian resident of this state who went to Michigan for the purpose of taking such examination after learning that the New York examination would be conducted entirely in English, and that he, having come from a country where English was not the language of the people, would be required to pass a regent's examination in English, though the Medical Examining Board of Michigan had been registered as maintaining a standard not lower than that required by the Public Health Law.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. § 5; Dec. Dig. § 5.*]

2. Physicians and Surgeons (§ 5*)—Licenses to Practice—Indorsement of Licenses of Other States.

Where a so-called reciprocity agreement between the authorized officials of this state and the Medical Examining Board of Michigan required licenses issued by the Michigan board to be certified as a condition to their indorsement by the regents and authorized the board of regents to request a reconsideration of any such certification if they had reasonable doubt of the qualifications of an applicant, and pursuant thereto the Michigan board was requested to reconsider its certification of a license, and thereupon withdrew it, and the Michigan board was not registered as maintaining a standard not lower than that required by the Public Health

Law (Laws 1909, c. 49 [Consol. Laws, c. 45]) § 169, other than by reason of such reciprocity agreement, the holder of such license was not entitled to have it indorsed under section 169, since, if the agreement effected a registration of the Michigan board within that section, the registration was subject to the provisions of the agreement, while, if the agreement was not a statutory registration, there was no registration authorizing an indorsement of the license.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. § 5; Dec. Dig. § 5.*]

Appeal from Special Term, Erie County.

Mandamus by the People, on relation of Eucarpio Pisani, against St. Clair McKelway and others, constituting the Board of Regents of the University of the State of New York, to compel respondents to indorse a license or diploma authorizing the relator to practice medicine in the state of Michigan, theretofore issued to him by the Medical Examining Board of that state, and to confer upon him all the rights and privileges of a license issued by the Board of Regents after an examination in this state. From an order denying a motion for a peremptory writ, the relator appeals. Affirmed.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Horace O. Lanza, of Buffalo, for appellant.
Frank B. Gilbert, of Albany, for respondents.

ROBSON, J. [1] The relator was on January 22, 1913, licensed to practice medicine in the state of Michigan, and seeks an indorsement by the respondents of his Michigan license in accordance with the provisions of section 169 of the Public Health Law (Consol. Laws, c. 45; Laws of 1909, c. 49). So much of this section as is here material reads as follows:

"Applicants (for a license to practice medicine) examined and licensed by other state examining boards registered by the regents as maintaining standards not lower than those provided by this article  *  *  *  may without further examination, on payment of twenty-five dollars to the regents and on submitting such evidence as they may require, receive from them an indorsement of their licenses or diplomas conferring all rights and privileges of a regents' license issued after examination."

The relator is an Italian; and is a graduate in medicine of the Royal University of Palermo, Italy. After coming to this country he became, and has since continued to be, a resident of Buffalo, N. Y. In the spring of 1912 he made inquiry as to the requirements for a medical licensing examination in this state, and ascertained that prior to entrance on such examination he would be required to take the special subject of second year English in regents' examination. This requirement is provided for by section 365 of Regents' Rules enacted September 20, 1905, as follows:

"English essential for qualifying certificates. All applicants for qualifying certificates upon equivalents from other countries, other than those in which English is the language of the people, must pass a regents' examination in English."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Section 168 of the Public Health Law also prescribes that examinations for medical licenses "shall be exclusively in writing and in English." With a knowledge of these facts, and, apparently, as is charged in the affidavit filed in reply on behalf of respondents on the return of the order to show cause, the relator, "upon finding that he was unable to enter the medical examination conducted by the New York State Board of Medical Examiners under the supervision of the Regents of the University, applied to the Michigan State Board of Registration in Medicine, for admission to the examinations conducted by such board, and, having passed such examination, was granted a medical license by such board." This examination was taken in Italian, and he was not required to take the examination in English required of applicants for medical examination in this state, who had received their preliminary education in foreign countries where the language of the people is not English. Within a few days after receiving his Michigan license, he made application to respondents for an indorsement thereof pursuant to the provisions of section 169 of the Public Health Law above quoted. Shortly after receiving this application, which had been indorsed by the Michigan Board, he was duly notified by the New York officials that his application had been returned to the Michigan Board with the request that they withdraw their indorsement of the application on the ground, as stated in the notification:

"(1) That you by going to Michigan for the examination have avoided the specific requirement in this state of which you were notified in May, viz., that in order to be admitted to our medical licensing examination you would have to pass the Regents' examination in second year English for foreigners; and (2) because you took the examination in Michigan not in English as required by the statute of this state and are not eligible to have your license indorsed."

Thereafter the Michigan board complied with the request made in behalf of respondents and withdrew its indorsement of relator's application, and it has not since been renewed. Relator alleges in his affidavit, upon which his application for the writ is based, that the Medical Examining Board of the State of Michigan, by which he was licensed to practice medicine in that state, is, within the provisions of said section 169 of the Public Health Law, registered by respondents as maintaining standards not lower than those required by the provisions of that section. He therefore claims that these two facts, to wit, that he has been licensed by the Michigan board to practice medicine and that the said board is registered by respondents within the requirements of the section, as matter of law, entitle him to the indorsement by respondents of his Michigan license. But the language of the section is not, in terms at least, mandatory upon respondents, absolutely requiring them to indorse a license which has been issued by a duly registered examining board of another state. The provision of the section on that point is that applicants with such licenses "may without further examination * * * receive from them (the Regents) an indorsement of their licenses or diplomas conferring all rights and privileges of a Regents' license issued after examination." This language is on its face permissive only and not obligatory. It is true that the discretion given the Regents in according, or withholding,

indorsement of a license in such case, cannot be arbitrarily exercised. But relator has not been discriminated against by the respondents in refusing their indorsement of his license for the reasons given above; since it appears that it has always been their policy to refuse applications for indorsement of licenses issued by other state examining boards where the qualifications, or credentials, of the applicants were such that they could not have been admitted to an examination in this state. That relator did not possess those qualifications inferentially appears. Certainly it does not appear from any examination he has taken that he possesses them. That his license was obtained in Michigan on an examination which would have been neither permitted nor accepted in this state also appears. The statute also provides for the submission to respondents by the applicant for indorsement of his license of such evidence as they may require. It would seem that respondents may properly require evidence that the applicant had as a preliminary to his examination by the registered board of another state, by a preliminary examination, or otherwise, shown that he had the knowledge of English which would have been required of him had he presented himself for examination in this state.

I am also of the opinion that relator's attempt to evade the respondents' requirements preliminary to an examination in this state and the further statutory requirement that such examination must be in the English language was a sufficient reason for respondents' refusal to indorse relator's license in the proper exercise of the discretion given them by the statute.

[2] If I am right in the conclusions above stated, it is unnecessary to discuss the effect of the reciprocity agreement, so called, entered into in behalf of the authorized officials of this state with the official board of the state of Michigan, which appears to be the only way in which, if at all, the latter has been, as the statute prescribes, registered in this state. It is sufficient to say that this agreement reserves fully to respondents the right to return to the Michigan board its certificate of indorsement of its license, issued by it to the applicant for indorsement in this state of such license, with a request for a reconsideration of the certification, if they have reasonable doubts of the qualifications of the applicant either personal or professional. The certification of relator's license received from the Michigan board was duly returned by respondents with a request that it withdraw the same. The reasons for this action by respondents were stated; in the sufficiency and propriety of which the Michigan board heartily concurred, and formally withdrew the certification. There is now before respondents no certification of relator's license by the Michigan board. Under the reciprocity agreement, such certification is required before an indorsement of such a license by respondents can be had. This seems to be a reasonable requirement as a condition precedent to an indorsement by respondents of such a license. It does not appear that relator can now either secure the return by the Michigan board of its original certification of his license, or procure a new certification thereof. This also seems to furnish sufficient reason for denying his application for the writ.

Again, the Michigan board has in no way other than by this reciprocity agreement been registered by respondents within the terms of the statute. If the agreement effects a registration, then such registration is subject to the provisions of the agreement. Acting within the agreement, respondents properly refused indorsement of relator's license. If the reciprocity agreement is not a statutory registration by respondents of the Michigan board, then that board has not been registered by respondents; and relator is for that reason not entitled to demand of respondents an indorsement of his license.

The order should be affirmed, with costs. All concur.

